IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHAWN ANTHONY GONZALEZ,

       Plaintiff,

v.                                        CIV No. 12-834 RB/GBW

TEX A. JOEY, RONALD MARTIN, JAVIER
ARCHULETA, and ROBERT MENDOZA,

       Defendants.

## SECOND PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before me on Plaintiff's objections (*doc. 45*) and Defendants'

response (*docs. 52, 53*) to the September 5, 2014 Proposed Findings and

Recommended Disposition (*doc. 44*) on Defendants' Motion for Summary

Judgment (*docs. 29, 30*). On September 25, 2014, the Court adopted the PFRD in

part, dismissed a number of Plaintiff's claims, and held in abeyance ruling on his

remaining claims. *Doc. 48.* The undersigned held a hearing on the remaining

claims on January 15, 2015. *See doc. 56.* Having considered the arguments and

testimony presented at the hearing, the applicable law, and being otherwise fully

advised, I recommend GRANTING summary judgment on Plaintiff's free

exercise and Religious Land Use and Institutionalized Persons Act (RLUIPA)

claims against Defendants Martin, Archuleta, and Mendoza, and DENYING

summary judgment on Plaintiff's free exercise, RLUIPA, and equal protection claims against Defendant Joey.

## I.   BACKGROUND

The events forming the basis of Plaintiff's claims were recited in detail in the September 5, 2014 PFRD (*doc. 44*), and will not be discussed in depth here.

Plaintiff was, at all relevant times, a state prisoner in the custody of the New Mexico Corrections Department.  *Doc. 20* at 2.  Plaintiff brought suit against Defendants under 42 U.S.C. § 1983 for alleged constitutional and statutory violations relating to (1) the denial of his request to participate in Native American programming by Defendant Joey, and (2) the confiscation of his composition notebook by Defendants Martin, Archuleta, and Mendoza.  *Docs. 13, 14.*

Defendants filed a *Martinez* report on November 4, 2014, in which they moved for summary judgment on all of Plaintiff's claims.  *Docs. 29, 30.*  After requesting supplemental briefing on the motion for summary judgment (*see docs. 45, 52, 53*), the undersigned entered his Proposed Findings and Recommended Disposition (PFRD) on September 5, 2014, recommending that the Court grant Defendants' Motion for Summary Judgment (*docs. 29, 30*), and dismiss Plaintiff's amended complaint (*docs. 13, 14*) with prejudice.

Plaintiff filed objections to the PFRD on September 16, 2014.  *Doc. 45*.  His objections contest the undersigned's recommended finding that Plaintiff does not have a sincerely held belief in his claimed religion of Mexicanahuallotl.  The Court adopted the sections of the PFRD to which Plaintiff did not object, and held in abeyance ruling on the claims relating to his sincerely held belief.

On September 17, 2014, Defendants were ordered to respond to Plaintiff's objections and to present argument and evidence relating to: (1) the basis for classifying Plaintiff as having a Christian preference, (2) Plaintiff's gang involvement since 2009, (3) whether Nahua and Mexicanahuallotl are distinct religions, and (4) the concerns (gang-related or otherwise) associated with Plaintiff's participation in Native American religious ceremonies and programming.  *Doc. 46*.  Defendants responded on October 17, 2014.  *Docs. 52, 53*.

A hearing was held before me on Plaintiff's remaining claims on January 15, 2015.  *See doc. 56*.  Defense counsel appeared in person and Plaintiff appeared remotely via videoconference.

## II.    STANDARD OF REVIEW ON SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) mandates dismissal where, upon consideration of all the briefing before the court, no genuine issue as to any material fact exists, and, based on that briefing, the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).   The Court must construe the

evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Summary judgment may be reached on the "pleadings, depositions, answers to interrogatories, and admissions on file" alone. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 323. Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). The opposing party must present more than conjecture and conclusory statements to defeat a summary judgment motion. *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009).

The purpose of a *Martinez* Report is to "develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir. 1991). "On summary judgment, a *Martinez* report is treated like an affidavit, and the court is not authorized to accept its fact findings if the prisoner has presented conflicting evidence." *Northington v. Jackson,* 973 F.2d 1518, 1521 (10th Cir.1992). A plaintiff's complaint may also be treated as an affidavit if it alleges facts based on the plaintiff's

personal knowledge and is sworn under penalty of perjury. *Hall*, 935 F.2d at 1111. A court may not rely on a *Martinez* report to resolve material disputed facts where it is in conflict with pleadings or affidavits, nor can material factual disputes be resolved based on conflicting affidavits. *Id.* at 1109, 1111. A factual dispute exists even when the plaintiff's factual allegations in conflict with the *Martinez* Report are less specific or well-documented than the factual findings in the *Martinez* Report. *Id.* at 1109.

The Court is mindful that, when evaluating the pleadings of a party proceeding *pro se*, a court must liberally construe them and should hold them to a less stringent standard than would be applied to the pleadings of a represented party. *Id.* at 1110. A court is not required, however, to assume the role of advocate for the *pro se* litigant, nor does the mere fact of appearing *pro se* alleviate the litigant's burden of presenting sufficient evidence to demonstrate a genuine factual dispute that would allow him to survive summary judgment. *DiCesare v. Stuart*, 12 F.3d 973, 979 (10th Cir. 1993) ("Pro se litigants are subject to the same rules of procedure that govern other litigants.").

## III. ANALYSIS

### A. Free Exercise of Religion

Plaintiff alleges that Defendant Joey violated his First Amendment right to freely practice his religion by denying him access to Native American

programming.  Plaintiff also asserts a free exercise claim against Defendants

Martin, Archuleta, and Mendoza for confiscating his composition notebook,

which Plaintiff claims contained religious materials.

The First Amendment protects an individual's ability to freely exercise his

religion.  U.S. Const. amend. I.  To allege a constitutional violation based on a

free exercise claim, a prisoner must survive a two-step inquiry.  *Kay v. Bemis,* 500

F.3d 1214, 1218 (10th Cir. 2007).  First, the prisoner must establish that the

defendants "substantially burdened [his] sincerely-held religious beliefs."  *Id*.  If

the prisoner makes this showing, the prison may then "identify the legitimate

penological interests that justified the impinging conduct."  *Id*.  At this step,

courts balance the four factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987), to

assess the reasonableness of the prison regulation.  *Id.* at 1219.

### 1.   *Defendants are not entitled to summary judgment on the basis that Plaintiff  not have a sincerely held religious belief*

Defendants maintain that Plaintiff does not have a sincerely held religious

belief in his claimed religion of Mexicanahuallotl, and therefore cannot meet his

burden under the first step of the free exercise analysis.  Though the undersigned

initially recommended finding as a matter of law that Plaintiff did not have a

sincerely held religious belief, after reviewing Plaintiff's objections and

considering his hearing testimony, I conclude that Plaintiff's sincerity of belief is a disputed fact that precludes summary judgment.

The inquiry into whether a plaintiff's religious beliefs are sincerely held is "almost exclusively a credibility assessment . . . and therefore the issue of sincerity can rarely be determined on summary judgment." *Kay*, 500 F.3d at 1219.  Dismissal on this ground is appropriate at the summary judgment stage only when a plaintiff's beliefs "are 'so bizarre, so clearly nonreligious in motivation that they are not entitled to . . . protection.'" *Id.* at 1219-20 (internal quotations omitted); *see also Mosier*, 937 F.2d at 1526.  Courts should limit their inquiry to "whether the claimant is . . . seeking to perpetrate a fraud on the court—whether he actually holds the beliefs he claims to hold . . . ." *Yellowbear v. Lampert*, 741 F.3d 48, 54 (10th Cir. 2014).

In making a sincerity determination, courts "look[] to the words and actions of the inmate." *Moussazadeh v. Texas Dep't of Criminal Justice*, 703 F.3d 781, 791 (5th Cir. 2013).  For example, courts have held that a prisoner does not have a sincerely held belief where he does not comply with practices he claims are essential to his faith, or when he acts in contradiction to his claimed religious practices.  *See Ford v. Fed. Bureau of Prisons*, No. 08-882, 2011 WL 2415790, at *9 (D. Colo. May 24, 2011), *report and recommendations adopted by Ford v. Fed. Bureau*

*of Prisons*, No. 08-882, 2011 WL 2358166 (D. Colo. June 10, 2011); *Gardner v. Riska*, 444 F. App'x 353 (11th Cir. 2011).

In the September 5, 2014 PFRD, the undersigned relied on the following facts to conclude that Plaintiff did not hold a sincerely held belief as a matter of law: (1) Plaintiff's false representation that he was a member of the Ysleta Del Sur Pueblo, (2) Plaintiff's initial classification as Christian in his 2001 intake interview, (3) Plaintiff's numerous requests to change his religious preference, and (4) Plaintiff's affiliation with the prison gang Sureños, which suggested an ulterior motive for claiming a religious belief. The Court now finds that all but the first of these facts are in dispute.

First, in his objections to the PFRD, Plaintiff vowed that he never informed the prison that he was Christian, and claims that NMCD classified him this way based on its own assumption. *Doc. 45* at 1. Although Defendants submitted an affidavit explaining the intake process in an effort to contest Plaintiff's assertion, this fact is now in dispute for purposes of summary judgment. *See Hall*, 935 F.2d at 1111 ("Material factual disputes cannot be resolved at summary judgment based on conflicting affidavits.").

As to Plaintiff's numerous requests to change his religious affiliation, this too is disputed. Plaintiff explained that he has always claimed to practice a single religion—Mexicanahuallotl, which is equivalent to both Mesoamerican

shamanism and Anahuac theology.  *Doc. 45* at 3; *Doc. 58* [hereinafter Hr'g Tr.] 9:14-18.  Plaintiff also admitted at the hearing that he had falsely claimed membership in the Ysleta Del Sur Pueblo in an attempt to comply with the prison policy, and acknowledged that it was "wrong of [him] to do" so.  Hr'g Tr. 7:10.  Given Plaintiff's claim that he never stated he was Christian, his explanation for lying about his membership in the Ysleta Del Sur Pueblo, and his testimony at the hearing concerning the equivalence of his other claimed religions, I recommend finding that Plaintiff did not repeatedly attempt to change his religious affiliation.

Finally, any alleged security concern posed by Plaintiff given his history in the Sureños prison gang is clearly disputed.  Plaintiff states that he is no longer a member of the Sureños gang, and testified under oath that his motivations for participating in Native American programming are purely religious in nature. Defendants, for their part, have conceded that "there is no current evidence that Plaintiff is actively participating in gang activity."  *Doc. 53* at 2.  In light of this evidence, I find that it is disputed whether Plaintiff is a gang member with a non-religious motive for requesting access to Native American programming.

Given the evidence set forth above, I find that all but one of the facts upon which I previously relied in concluding that Plaintiff did not have a sincerely held religious belief are now in dispute.  Thus, I recommend finding that there

are sufficient factual disputes regarding Plaintiff's sincerity of belief to prevent

the Court from granting summary judgment on that basis.

### 2.   *Whether Defendants' actions substantially burdened Plaintiff's sincerely held religious beliefs*

Having determined that the Court cannot conclude, as a matter of law,

that Plaintiff does not have a sincere belief in Mexicanahuallotl, the next question

is whether Defendants' actions placed a substantial burden on Plaintiff's

religious beliefs.   There are several manners in which the government might

substantially burden a religious exercise.  *Abdulhaseeb v. Calbone*, 600 F.3d 1301,

1315 (10th Cir. 2010)).  For our purposes, the government substantially burdens a

religious belief where it "prevents participation in conduct motivated by a

sincerely held religious belief."  *Id.*

#### a)   *Defendants Martin, Archuleta, and Mendoza did not substantially burden Plaintiff's religious beliefs when they confiscated his notebook*

Plaintiff has not met his burden of establishing that the confiscation of his

composition notebook placed a substantial burden on his sincere religious

beliefs.  At the hearing, Plaintiff gave the following response, under oath, to a

question posed by the Court:

> THE COURT:        Well, how did the confiscation of the notebook, how
> does it burden your ability to practice your religion?

> MR. GONZALEZ:   It does not burden me to—for the practice of my
> religion.  At the time that it was confiscated, it
> appeared to be in retaliation for the filing of the civil
> suit . . . .

Hr'g Tr. 24:4-10.  Given this testimony, the Court finds that the confiscation of

Plaintiff's notebook did not burden his religious beliefs, and therefore

recommends granting summary judgment on Plaintiff's free exercise claim

against Defendants Martin, Archuleta, and Mendoza.

> b)  *Plaintiff's claim against Defendant Joey for denying him access*
> *to Native American programming*

With respect to Plaintiff's free exercise claim against Defendant Joey, I find

that whether the denial of access to Native American programming substantially

burdened Plaintiff's sincere religious beliefs is a disputed fact precluding

summary judgment.

At the hearing, the Court asked Plaintiff to explain how his religious

beliefs and practices differed from those of Native Americans.  Plaintiff described

his religion as "the core essence of Native American spirituality," Hr'g Tr. 9:17-

18, and stated that "[i]t is one belief system . . . .  It is all of the same essence."

Hr'g Tr. 10:3-4.  Specifically, Plaintiff testified that his religious beliefs centered

on "the sweat, purification, everything [r]evolves around purifying, sins,

mentality, character . . . ."  Hr'g Tr. 11:13-15.  Plaintiff further testified that four of

the five programs offered to Native Americans were practices that coincided

with his religious beliefs. Hr'g Tr. 12:12-13:3. Thus, denying Plaintiff access to Native American programming and ceremonial practices would "prevent[] participation in conduct motivated by [his] sincerely held religious belief." *Abdulhaseeb*, 600 F.3d at 1315.

Defendants, citing to an exhibit provided by Plaintiff (*doc. 33-4* at 6-7), countered that, according to indigenous Mexican culture, the sweat bath is not religious in nature, but medicinal. Hr'g Tr. 31:10-11. Thus, Plaintiff's religious beliefs could not be burdened by denying him access to the sweat lodge because, according to his own belief system, it is not a religious practice.

Defendants' argument is misplaced. The relevant inquiry is not whether the religious practice in question is mandated by Plaintiff's religion, but whether Plaintiff himself sincerely believes in that religious practice. *LaFevers v. Saffle*, 936 F.2d 1117, 1120 (10th Cir. 1991) ("[W]hether plaintiff's religious belief's [sic] warrant First Amendment protection depends on whether his convictions are sincere, not on whether [the religion] formally requires . . . its members [to engage in a certain practice]."); *see also Kay,* 500 F.3d at 1220 ("Religious sincerity—not necessity—is the key component to satisfying the first step of a prisoner's free exercise claim at this stage of the litigation."); *Holt v. Hobbs*, 135 S. Ct. 853, 863 (2015) ("[T]he protection of RLUIPA, no less than the guarantee of

the Free Exercise Clause, is not limited to beliefs which are shared by all of the members of a religious sect.")(internal citation omitted).

Plaintiff has presented adequate allegations that his religious beliefs are sincere, and the testimony and argument presented at the hearing clearly demonstrate that there remains a factual dispute regarding the extent to which the denial of Native American programming burdens Plaintiff's sincerely held religious beliefs. I therefore recommend that the Court decline to grant summary judgment on Plaintiff's free exercise claim against Defendant Joey on this basis.

i.   Defendants' conduct is not a reasonable under the *Turner* factors

Plaintiff has presented sufficient evidence to create a genuine issue of material fact at step one of the free exercise analysis—whether the denial of access to Native American programming substantially burdened his sincere religious beliefs. At the second step of the analysis, the burden shifts to Defendants to establish that the conduct burdening his beliefs is reasonable.

The prison policy, which was enacted pursuant to the Native American Counseling Act, N.M. STAT. ANN. § 33-10-1 (1978), provides that "[o]nly those persons who have submitted . . . Documentation of Native American Heritage . . . shall be allowed to participate in Native American Religious Programs . . . ." *Doc. 29*, Ex. A-4 at 00053. "Documentation of Native American Heritage" is in turn defined as "[e]vidence which has been verified and authenticated, and

13

which is determined to be satisfactory and sufficient to establish that the inmate

is descended from or is a member of an American Indian tribe, pueblo or band . .

. ." *Id.*, Ex. A-4 at 00052.  However, the policy does permit "an inmate who . . .

has no valid Tribal Census or Enrollment Number, but appears . . . to be eligible

to apply for and receive one [to be granted] a ninety (90) day grace period . . .

[during which he] shall be considered immediately, but provisionally, eligible to

participate in available Native American Religious Programming." *Id.*, Ex. A-4 at

00058.

Plaintiff, who is not "descended from or a member of an American Indian

tribe, pueblo or band," cannot provide proof thereof.  As such, the policy

prohibits him from participating in the Native American programming.

Whether this policy operates as a reasonable burden on Plaintiff's beliefs requires

consideration of the four factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987).

These factors are:

> 1)   Whether there is a valid, rational connection between the prison
>       regulation and the legitimate governmental interest put forward to
>       justify it;
> 2)   Whether there are alternative means of exercising the right that
>       remain open to the inmates;
> 3)   The impact that accommodation of the asserted constitutional right
>       would have on the guards and on other inmates, as well as on the
>       resources of the prison; and
> 4)   The availability of ready alternatives for furthering the government
>       interest.

*Beard v. Banks*, 548 U.S. 521, 529 (2006) (citing *Turner v. Safely*, 482 U.S. 78 (1987)).

14

As to the first factor, Defendants contend that the policy is logically connected to the legitimate interest of "adhering to the purpose and intent of . . . [the New Mexico] Native American Counseling Act." *Doc. 29* at 15.  The purpose and intent of that Act is, in turn, "to develop and instill cultural pride and improve the self-image of native Americans; to develop an understanding of the cultural differences between native Americans and other ethnic groups . . . , [and] to increase the availability of Indian spiritual leaders for teaching native Americans in the areas of Indian history, cultural sensitivity and Indian religion . . . ."  N.M. STAT. ANN. § 33-10-2 (1978).  The Court has little difficulty concluding that the preservation of Native American culture and religion is a legitimate government interest.  *See U.S. v. Hardman*, 297 F.3d 1116, 1129 (10th Cir. 2002) ("[W]e have little trouble finding a *compelling interest* in protecting Indian cultures from extinction.") (emphasis added).

Defendants argue that "[t]o permit Plaintiff and all persons who are Mexican American to participate in Native American Programming is contrary to the State laws [sic] intent . . . ."  *Doc. 29* at 16.  Prohibiting non-Native Americans from gaining unfettered access to Native American programming is rationally related to the goal of preserving Native American culture because it maintains a

venue for cultural practices that is free from outside interference or influence or

distraction.[1]  Thus, this factor weighs in favor of Defendants.

As to the second factor, Defendants state that Plaintiff was provided

alternative means of practicing his religion when he was permitted to participate

in Native American programming during a 90-day grace period.  *Doc. 29* at 16-

17.  This was not an alternative means for Plaintiff to practice his religion; it was

only a temporary resolution that allowed him to practice as he seeks to do on a

permanent basis.  The absence of alternative means for Plaintiff to practice his

religion provides "some evidence" that the policy is unreasonable; however, it is

not "conclusive."  *Beard*, 548 U.S. at 532 (citing *Overton v. Bazzetta,* 539 U.S. 126,

135 (2003)).  The Court thus concludes that this factor, while not determinative,

weighs in favor of Plaintiff.

With respect to the third factor—the impact that accommodation would

have on the guards, other inmates, and the resources of the prison—Defendants

argue that "granting . . . Plaintiff's demands would threaten security of the

institution" because it would be "permitting him to engage in gang related

activity . . . ."  *Doc. 29* at 17.  Defendants also urge that permitting Plaintiff to

participate in Native American programming without requiring him to meet the

---

[1] Of course, the rational basis test is an extremely deferential test.  As discussed below, the policy
does not survive more exacting review under the strict scrutiny tests of both RLUIPA and race-
based equal protection jurisprudence.

definition of Native American "could result in the perception of favoritism, which could have a negative impact on the native American prison population and on NMCD efforts to encourage positive Native American programming." *Doc. 29* at 17-18.

The Court readily agrees that security within a detention facility is of the utmost importance.  Moreover, the fact that supervision is limited at the sweat lodge out of respect for the religious ceremonies conducted there means that security is a particular concern at the sweat lodge.  Hr'g Tr. 37:6-12.  However, Defendants have failed to establish that eliminating a pure race-based policy of admission to Native American programming would have a significantly deleterious impact "on the guards, other inmates, and resources of the prison." Certainly, Defendants have not established a particular security concern posed by Plaintiff.  In fact, they have conceded that they have no evidence that Plaintiff is currently engaging in gang activity.  Similarly, the assertion that permitting Plaintiff to participate in Native American programming could result in the perception of favoritism is unsupported and conclusory.  Although the interests surrounding the policy are rational in the abstract, as applied to Plaintiff they quickly break down.  Plaintiff has demonstrated a sufficiently sincere belief to survive summary judgment and Defendants have failed to demonstrate that their policy goals, let alone their resources, would be adversely impacted by providing

Plaintiff access to Native American programming.  I therefore find that the third

factor weighs in Plaintiff's favor.

The fourth and final *Turner* factor is the availability of ready alternatives

for furthering the government interest.  Defendants do not explicitly address this

factor.  Rather, they discuss whether Plaintiff had ready alternatives to practice

his religion.  Defendants argue that although he "was provided numerous

opportunities and accommodations in his request for Native American

Programming, . . . [he] failed to provide any . . . documentation."  *Doc. 29* at 18.

This factor, however, is directed at whether the prison could accomplish

the legitimate governmental interest discussed in the first factor in some other

fashion.  As discussed above, the governmental interest here is to preserve

Native American religion and culture by giving Native American inmates a place

and programming through which they can conduct religious and cultural

practices.  Without question, permitting access to these locations and

programming to persons who do not sincerely practice a Native American

religion would interfere with the purpose.  However, it does not follow that the

governmental interest would be thwarted by allowing sincere practitioners of a

Native American religion who are not racially Native American.  Indeed,

permitting the participation of these individuals would seem to enhance certain

expressed governmental interests such as the "develop[ment of] an

understanding of the cultural differences between native Americans and other ethnic groups."  N.M. STAT. ANN. § 33-10-2 (1978).

Consequently, the prison policy could easily be amended to provide "alternative method[s] of accommodating the claimant's constitutional complaint . . . that fully accommodates the prisoner's rights at de minimis costs to valid penological interests."  *Beard*, 528 U.S. at 532 (internal quotation omitted).  For example, Defendants could amend the policy to permit the participation of non-Native American inmates with a sincere belief in the religious practices of Native Americans.  The prison need not blindly accept the inmate's statement of sincere belief but could require the inmate to present extrinsic evidence.  For example, in this case, the Court suggested evidence such as "letters from Native Americans with whom Plaintiff has sweat before" attesting that he "took [the religious practices] seriously."  Hr'g Tr. 48:18-25.  While assessing the sincerity of an inmate's religious belief is certainly more challenging than applying a bright-line race-based rule, the process does not carry significant costs to valid penological interests.  Because there appear to be alternatives for both accommodating Plaintiff's request and furthering the government interest at de minimis cost, I find this factor weighs heavily in Plaintiff's favor.

Ultimately, the inquiry under *Turner* is the "reasonableness of the regulation at issue."  *Beard*, 528 U.S. at 529 (citing *Turner,* 482 U.S. at 89).

Although "our inferences must accord deference to the views of prison authorities," *id.* at 530, at the summary judgment stage, the Court "must draw all justifiable inferences in [Plaintiff's] favor." *Id.* at 529-530 (internal quotations omitted).  Based on the foregoing analysis, I find that Defendants have not established as a matter of law that the policy at issue is a reasonable one.  I therefore recommend that the Court deny Defendants' Motion for Summary Judgment as to Plaintiff's free exercise claim against Defendant Joey.

  **B.**  **RLUIPA**

   Plaintiff also brings claims against all Defendants under the Religious Land Use and Institutionalized Persons Act (RLUIPA).  For the following reasons, I recommend granting summary judgment on Plaintiff's RLUIPA claims against all Defendants in their individual capacities, and denying summary judgment against Defendant Joey in his official capacity.

    ***1.***  ***Individual-capacity claims against all Defendants***

   RLUIPA only permits "relief against a government."  42 U.S.C. § 2000cc-2(a).  Thus, Defendants cannot be sued in their individual capacities.  *Stewart v. Beach*, 701 F.3d 1322, 1334 (10th Cir. 2012).  In the September 5, 2014 PFRD, the undersigned construed Plaintiff's claims against Defendants Martin, Archuleta, and Mendoza as claims against them in their individual capacities, only.  *Doc. 44* at 17-18.  I therefore recommend granting summary judgment on Plaintiff's

RLUIPA claim against these three Defendants.  Likewise, Plaintiff's claim against Defendant Joey in his individual capacity should also be dismissed.

## 2. *Official-capacity claim against Defendant Joey*

In addition to the individual-capacity claims, Plaintiff brings an official-capacity claim against Defendant Joey for denying him access to Native American programming.  Because a claim against an individual defendant in his official capacity under 42 U.S.C. § 1983 is akin to "impos[ing] liability on the entity that he represents," this claim constitutes a claim against the government for purposes of RLUIPA.  *Brandon v. Holt*, 469 U.S. 464, 471 (1985).

To state a claim under RLUIPA, Plaintiff must make the same preliminary showing as under the free exercise clause: that the restriction substantially burdened his sincerely held religious beliefs.  *Ford*, 2011 WL 2415790, at *9.  I have already recommended finding that Plaintiff has set forth sufficient facts to avoid summary judgment on that basis.  Therefore, I will move forward to step two of the RLUIPA analysis.

a) *Defendants have not established that the prison policy is the least restrictive means of furthering a compelling government interest.*

Step two of the RLUIPA analysis requires that the prison policy be the least restrictive means of furthering a compelling government interest.  42 U.S.C. § 2000cc-1(a)(1)–(2) (2000).  RLUIPA offers expansive protection of a prisoner's

religious exercise and "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution."   42 U.S.C. § 2000cc-3(g).  When performing a RLUIPA analysis, a court should consider "whether the prison's claimed . . . interests qualify as compelling in the context of particular cases, not in the abstract." *Yellowbear v. Lampert*, 741 F.3d 48, 58 (10th Cir. 2014).  Thus, Defendants must show that their refusal to permit Plaintiff to participate in Native American programming was both in furtherance of a compelling governmental interest and was the least restrictive means of furthering that interest.  *See Holt v. Hobbs*, 135 S. Ct. 853, 863 (2015).

Throughout the course of this litigation, Defendants have noted two separate interests that they contend are served by this policy.  First, Defendants allege that the policy serves the compelling interest in meeting the mandated provisions of the . . . Native American Counseling Act," and its goal to preserve Native American culture and religion.  *Doc. 40* at 11.  The Tenth Circuit recognized this as a compelling government interest in *United States v. Hardman*. 297 F.3d 1116, 1129 (10th Cir. 2002) ("[T]he government's general interests in preserving Native American culture and religion in-and-of-themselves . . . remain compelling interests.").

Defendants also assert that the policy governing Native American programming serves the compelling interest of maintaining prison security. *See, e.g.*, Hr'g Tr. 33:14-38:7 (discussing the prison's interest in security). While the Court readily agrees that "all states have a compelling interest in maintaining order and internal security within their prisons," *Johnson v. California*, 543 U.S. 499, 547-8 (2005), Defendants must also show that the interest is compelling in this particular case. *Holt*, 135 S. Ct. at 863 (citation omitted). At the hearing, Defendant Ronald Martin, sergeant of the Security Threat Intelligence Unit (STIU), explained that "because [the sweat lodge] is a sacred situation . . ., [the prison] would not have access to monitor in any way, other than from a distance." Hr'g Tr. 37:6-9. Thus, gang members could potentially use this space to "interact in gang activity or gang business that would result in violence in our prison system." Hr'g Tr. 37:9-11. However, this security concern does not specifically implicate Plaintiff. In fact, Defendant Martin conceded that, "[a]s far as the security of Mr. Gonzalez, [he has] no way to determine if he's being sincere or not . . . ." Hr'g Tr. 37:12-13. Rather, "[t]he security aspect . . . that concerns [Defendant Martin] as a gang monitor is that this would open the door for individuals that are active members in the California Sureños . . . to claim that they're also practicing [Plaintiff's claimed religion] and [would enable them to] go to [the] sweat lodge . . . ." Hr'g Tr. 37:2-6. Given this testimony, the Court is

not convinced that the policy, as applied to Plaintiff himself, furthers the compelling interest of maintaining prison security.

Even assuming that Defendants have identified two valid compelling interests that are furthered by the prison's policy as applied to Plaintiff, they have not established that the policy is the least restrictive means of furthering these interests. "The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal[s] without imposing a substantial burden on the exercise of religion by the objecting party. *Holt*, 135 S. Ct. at 864 (internal quotations and citation omitted). "[I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Id.* (quoting *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 815 (2000)).

Defendants assert that the policy is the least restrictive means of furthering their compelling interests because Plaintiff was given the opportunity to submit alternative evidence of his sincere belief in order to qualify himself as "Native American" for purposes of the policy. *Doc. 40* at 12-13 (citing section H(2)(c) of the policy). Specifically, Defendants stated at the hearing that the prison Chaplain had advised Plaintiff he could provide "a certified letter from Nahua representatives or any religious leader or cultural leader regarding Anahuac theology" to attest to his religious sincerity. Hr'g Tr. 39:18-20.

The Court disagrees with Defendants' interpretation of the prison's policy on Native American programming, and concludes that it "is a purely race-based policy as written." Hr'g Tr. 44:2-3. Contrary to Defendants' protestations, there is not a possible basis for an exception in the policy that would permit a non-Native American to obtain access to Native American programming based on their sincere beliefs. Thus, like the policy in *Holt*, the policy here "makes no exception for inmates . . . on religious grounds." 135 S. Ct. 853, 860.

Moreover, even if the policy permitted evidence of sincere belief but limited that evidence to an affidavit from a religious leader, such an approach would be too limited to meet the least-restrictive-means standard. Not every inmate with a sincere religious belief could realistically obtain an affidavit from a religious leader attesting to their sincerity, because there may be no organized religious leadership structure in that inmate's faith. *See id*. at 862-63 (rejecting reliance solely on opinions of institutional scholars of religion). The least-restrictive-means approach would dictate that the prison at least consider any evidence the prisoner can collect to demonstrate his sincerity.

Because Defendants have not proven that the policy is the least restrictive means of achieving their compelling interests, I recommend that the Court deny Defendants' Motion for Summary Judgment as to Plaintiff's RLUIPA claim against Defendant Joey in his official capacity.

### 3. *Plaintiff is limited to injunctive relief for his RLUIPA claim*

Although Plaintiff's RLUIPA claim against Defendant Joey in his official capacity survives, it is equivalent to a claim against the state such that sovereign immunity limits his available remedies to injunctive relief only. *Sossamon v. Texas*, 131 S. Ct. 1651, 1663 (2011) (states did not consent to waive their immunity to suits for money damages under RLUIPA, and therefore cannot be sued for money damages). Thus, Plaintiff is not entitled to money damages on this claim.

### C. Equal Protection

Plaintiff's final remaining claim is against Defendant Joey in both his official and individual capacities for violation of his right to equal protection under the law. Plaintiff argues that the prison's policy on Native American programming is unconstitutionally race-based because it only permits people with Native American blood to participate.

"To sustain a claim under the Equal Protection Clause, a plaintiff must provide evidence that he was treated differently from others who are similarly situated to him, and that the acts forming the basis of the plaintiff's claim were motivated by a discriminatory purpose." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157 (10th 2003). In the September 5, 2014 PFRD, the undersigned recommended that the Court dismiss Plaintiff's equal protection claim against Defendant Joey based on a finding that Plaintiff was not "'similarly situated' to

Native Americans who practice Native American religions," because he did not
have a sincerely held belief in Mexicanahuallotl.  *Doc. 44* at 28.  Because I now
recommend that the Court decline to find as a matter of law that Plaintiff does
not have a sincerely held religious belief, this premise can no longer form the
basis for dismissing his equal protection claim.  In other words, Plaintiff's alleged
sincerely held religious belief in Mexicanahuallotl, which he asserts is akin to the
Native American beliefs and the practices offered by Native American
programming, would make him similarly situated to those Native Americans
who have been granted access to the programming.

Since Plaintiff has made the threshold showing that he was treated
differently on the basis of race from others who were similarly situated, the
burden shifts to Defendants to show that the policy is "narrowly tailored to serve
a compelling state interest."  *Johnson,* 543 U.S. at 509.  The Supreme Court has
held that courts must apply the heightened standard of strict scrutiny even in the
prison context, noting that "[r]ace discrimination is especially pernicious in the
administration of justice."  *Id.* at 511 (citation omitted).  This is no less true in
situations assessing "so-called 'benign'" racial classifications meant to benefit a
minority group, such as the one at issue here.  *Id.* at 505.

As set forth above in section III.B.2(a), Defendants have identified two
compelling interests to justify the prison's policy on Native American

programming: (1) preservation of Native American culture and religion, and (2) security within the prison.  Because I find that the policy is not narrowly tailored to serve either of these interests, and I recommend that the Court deny summary judgment on Plaintiff's equal protection claim.

"The purpose of the narrow tailoring requirement [in the context of racial distinctions] is to ensure that the means chosen fit the compelling goal so closely that there is little or no possibility that the motive for the classification was illegitimate racial prejudice or stereotype."  *Grutter v. Bollinger*, 539 U.S. 306, 333 (2003) (superseded by amendment to the state constitution) (citations omitted).  To be narrowly tailored, a policy cannot make "the factor of race . . . decisive."  *Gratz v. Bollinger*, 539 U.S. 244, 272 (2003) (citation omitted).  Instead, it must consider race "in a flexible, nonmechanical way."  *Grutter*, 539 U.S. at 334.

Here, the prison excludes from Native American programming all individuals who are unable to provide Documentation of Native American Heritage "to establish that the inmate is descended from or is a member of an American Indian tribe, pueblo or band . . . ."  *Doc. 29*, Ex. A-4 at 00052-53.  Because the policy makes Native American race a decisive factor, it is manifestly not narrowly tailored.  Moreover, although the intended beneficiaries of the Native American Counseling Act are undoubtedly Native Americans, nothing in the text of statute itself compels the conclusion that Native American

programming requires excluding individuals with similar religious beliefs.  *See*

N.M. STAT. ANN. § 33-10-4 (1993).

The prison further argues that, by limiting access to Native American

programming to *bona fide* Native Americans, the policy is able to exclude Sureños

gang members from low-security areas such as the sweat lodge, and thereby

maintain prison security.  *See supra* section III.B.2(a).  While this may be true, it

does not relieve Defendants of the obligation to narrowly tailor their policy.  *See*

*Johnson*, 543 U.S. 511 ("When government officials are permitted to use race as a

proxy for gang membership and violence without . . . proving that their means

are narrowly tailored, society as a whole suffers.").  Importantly, narrow

tailoring "require[s] serious, good faith consideration of workable race-neutral

alternatives . . . ."  *Grutter*, 539 U.S. at 339.  Defendants have failed to show that

they considered any workable race-neutral alternatives to their policy on Native

American programming.

For the foregoing reasons, I find that the prison policy is not narrowly

tailored to a compelling government interest, and therefore recommend that the

Court deny summary judgment as to Plaintiff's equal protection claim.

**D. Relief Available to Plaintiff**[2]

    *1. Plaintiff is not entitled to compensatory damages under the Prison Litigation Reform Act*

The Prison Litigation Reform Act (PLRA) limits the recovery available in civil actions brought by prisoners under 42 U.S.C. § 1983. Specifically, section 803(d) of the PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).

The Tenth Circuit has held that, under the plain language of the statute, "proof of physical injury [is required] before any damages for mental or emotional injury [can] be awarded." *Searles v. Van Bebber*, 251 F.3d 869, 877 (10th Cir. 2001). "The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional." *Id.* at 876.

At the hearing, Plaintiff confirmed that he had not suffered any physical injury as a result of any of the grievances in his suit:

THE COURT:    I just want to confirm with you, have you suffered any physical injury as a result of any of the things that this lawsuit are about?

MR. GONZALEZ:  No, sir, I have not.

---

[2] Because I recommend that the Court grant summary judgment on Plaintiff's claims against Defendants Martin, Archuleta and Mendoza, I will not consider those claims in this section.

THE COURT:          Okay, so your monetary claims are—would be based on, you know, emotional distress or mental anguish from not being able to practice your religion as you see fit; is that right?

MR. GONZALEZ:   Correct.

Hr'g Tr. 6:12-20.  Plaintiff has alleged no physical injury, and is therefore not

entitled to compensatory damages on any of his claims under the PLRA.

### 2.  Plaintiff is entitled to nominal damages

Although Plaintiff is barred from collecting compensatory damages, he

may still be entitled to nominal damages.  "Because 'nominal damages . . . are the

appropriate means of 'vindicating' rights whose deprivation has not caused

actual, provable injury . . . and because the statute does not reveal any attempt to

alter that rule with respect to this class of cases, [the Tenth Circuit has held] that

section 1997e(e) does not bar recovery of nominal damages for violations of

prisoners' rights."  *Searles*, 251 F.3d at 878-79.

Thus, should Plaintiff succeed on the merits of his claims, he may receive

nominal damages.[3]

---

[3] With the exception of Plaintiff's RLUIPA claim, which entitles him to injunctive relief only.  *See supra* section III.B.3.

### 3. *Plaintiff is not entitled to punitive damages*

Finally, I recommend that the Court find, as a matter of law, that Plaintiff is not entitled to punitive damages on any of his claims. "The legal standard for punitive damages in cases under 42 U.S.C. § 1983 is well established." *Id.* at 879. A prisoner plaintiff may be awarded damages under the PLRA, but "only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Id.* (internal quotations omitted). "Whether the evidence [is] sufficient [for punitive damages] is a question of law . . . ." *Id.*

Here, Plaintiff has presented no evidence that Defendant Joey's actions in denying him access to Native American programming were motivated by evil motive or intent, or involved reckless or callous indifference to Plaintiff's rights. As counsel stated at the hearing, Plaintiff was given the opportunity to present evidence from outside religious leaders to confirm his religious beliefs. Hr'g Tr. 39:11-25. He was also granted permission to participate in Native American programming for a 90-day provisional period. *Doc. 29* at 2, 16-17.

For the foregoing reasons, I recommend that the Court find, as a matter of law, that Plaintiff is not entitled to punitive damages.

### 4. *The Seventh Amendment right to jury trial does not apply to Plaintiff's case*

Finally, Plaintiff has requested a trial by jury in this matter.  *See docs. 13* at 10, *14* at 10, *38*.  "In an action for damages under § 1983, the seventh amendment requires a jury trial upon demand where the amount in controversy exceeds twenty dollars."  *Burt v. Abel*, 585 F.2d 613, 616 n.7 (4th Cir. 1978).  This right holds true even when the plaintiff is a prisoner.  *See Rubins v. Roetker*, 936 F.2d 583, at *2 (10th Cir. 1991) (permitting evidentiary hearing by magistrate judge because incarcerated plaintiff had waived his right to jury trial).

The undersigned recommends finding that Plaintiff is not entitled to a jury trial because he cannot receive compensatory or punitive damages.  Rather, his sole available remedy is for injunctive relief or nominal damages.  If Plaintiff's claims "entitle him to no more than nominal damages, the seventh amendment will not be applicable because of an insufficient amount in controversy."  *Burt*, 585 F.2d at 616 n.7.  Because Plaintiff cannot establish an amount in controversy exceeding twenty dollars, the Seventh Amendment right to jury trial does not apply, and I recommend that the Court DENY Plaintiff's Motion for Jury Demand (*doc. 38*).

**IV.    CONCLUSION**

For the foregoing reasons, I recommend that the Court GRANT summary

judgment on Plaintiff's free exercise and RLUIPA claims against Defendants

Martin, Archuleta, and Mendoza, and DENY summary judgment on Plaintiff's

free exercise, RLUIPA[4], and equal protection claims against Defendant Joey.

I further recommend that the Court DENY Plaintiff's Motion for Jury

Demand (*doc. 38*).


_____

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS
OF SERVICE** of a copy of these Proposed Findings and Recommended
Disposition they may file written objections with the Clerk of the District Court
pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the
Clerk of the District Court within the fourteen-day period if that party wants
to have appellate review of the proposed findings and recommended
disposition.  If no objections are filed, no appellate review will be allowed.**

---

[4] As noted in section III.B.1, *supra*, RLUIPA does not allow for cause of actions against defendants
in their individual capacities.  Thus, I recommend finding that only the official-capacity RLUIPA
claim against Defendant Joey would remain.