IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHAWN ANTHONY GONZALEZ,

    Plaintiff,

v.                                Civ. No. 12-834 RB/GBW

TEX A. JOEY,

    Defendant.

**ORDER OVERRULING OBJECTIONS AND ADOPTING THE PROPOSED
FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on review of the Magistrate Judge's Proposed Findings and Recommended Disposition ("PFRD") (*doc. 122*) and Defendant's Objections (*doc. 123*). Plaintiff filed suit alleging that Defendant violated his First Amendment right to freely exercise his religion, his Fourteenth Amendment right to equal protection under the law, and his statutory religious rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA). *See docs. 1, 14*. In his PFRD, the Magistrate Judge recommended that the Court enter judgment in favor of Plaintiff as to each of Plaintiff's claims. *Doc. 122* at 26.

As required, I have conducted a *de novo* review of those portions of the PFRD to which Petitioner objected. *See Garcia v. City of Albuquerque*, 232 F.3d 760, 766-67 (10th Cir. 2000). For the reasons given below, I agree with the reasoning of the Magistrate

Judge, overrule Petitioner's objections, adopt the PFRD, and enter judgment in favor of Plaintiff as to each of Plaintiff's claims.

**I.  BACKGROUND**

Plaintiff is a state prisoner of the New Mexico Corrections Department ("NMCD") and was, at all relevant times, housed at the Santa Fe Penitentiary. *Doc. 20* at 2. Plaintiff filed an amended complaint bringing claims against Tex A. Joey, who was, at all relevant times, the Native American Programs Coordinator for NMCD. *Docs. 13, 14*.

Plaintiff is of Mexican descent and does not belong to a federally-recognized Native American tribe. *Doc. 13* at 2-3. Under NMCD Department Policy CD-101100/101101, "[o]nly those persons who have submitted satisfactory and sufficient documentation of Native American Heritage to the Corrections Department shall be allowed to participate in Native American Religious Programs or to have personal religious items (as herein defined) in their possession." *See* Stip. Ex. 2. The Santa Fe Penitentiary provides sweat lodges for use as part of NMCD's Native American religious programming. *Doc. 122* at 1.

In August 2009, Plaintiff filed a petition requesting access to Native American religious programming, but Defendant denied his request. *Doc. 122* at 10. After multiple failed attempts to gain access to Native American religious programming, Plaintiff filed an official grievance, which was denied by NMCD. *Doc. 122* at 5. On July

30, 2012, Plaintiff filed this action in federal court, claiming that Defendant had violated his constitutional and statutory rights.  *Doc. 1*.

A bench trial was held before the Magistrate Judge on November 18-19, 2015. *Docs. 116, 117*.  On March 2, 2016, the Magistrate Judge issued the PFRD recommending that the Court enter judgment in favor of Plaintiff as to each of Plaintiff's claims.  *Doc. 122*.  Petitioner timely filed objections to the PFRD on March 16, 2016.  *Doc. 123*.

## II.　LEGAL STANDARD

In order to prevail on a free exercise claim, Plaintiff must first demonstrate that the prison regulation "substantially burdened [his] sincerely-held religious beliefs." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (internal citations omitted).  If Plaintiff makes this showing, Defendant may then "identify the legitimate penological interests that justified the impinging conduct."  *Id*.

The required preliminary showing under RLUIPA is identical to that of the free exercise clause: that the restriction substantially burdened Plaintiff's sincerely-held religious beliefs.  *See Yellowbear v. Lampert*, 741 F.3d 48, 54-55 (10th Cir. 2014); *Ford v. Fed. Bureau of Prisons*, No. 08-882, 2011 WL 2415790, at *9 (D. Colo. May 24, 2011), *report and recommendations adopted*, No. 08-882, 2011 WL 2358166 (D. Colo. June 10, 2011).  If Plaintiff demonstrates that the restriction substantially burdened his sincerely-held religious beliefs, the burden of persuasion shifts to the Defendant to show that the

prison policy is the least restrictive means of furthering a compelling government interest. 42 U.S.C. § 2000cc-1(a)(1)–(2) (2000).

Finally, to assert an equal protection claim, Plaintiff "must first make a threshold showing that [he was] treated differently from others who were similarly situated to [him]." *Brown v. Montoya,* 662 F.3d 1152, 1172–73 (10th Cir.2011) (internal quotation marks omitted). If Plaintiff makes this showing, the burden shifts to Defendant to show that his actions were "narrowly tailored to achieve a compelling government interest." *KT & G Corp. v. Att'y Gen.,* 535 F.3d 1114, 1137 (10th Cir. 2008); *see also Riddle v. Mondragon,* 83 F.3d 1197, 1207 (10th Cir. 1996).

After a party objects to the magistrate judge's proposed findings and recommendations, the Court "shall make a de novo determination of those portions . . . to which objection is made." 28 U.S.C. § 636(b). Objections must be made with specificity; general or conclusory objections are insufficient. *See United States v. 2121 E. 30th St.,* 73 F.3d 1057, 1060-61 (10th Cir. 1996). "Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996).

### III.   ANALYSIS

Defendant has stated sixteen objections relating to the factual findings and conclusions of law provided in the PFRD.

**A. Objection 1: Factual Finding of Plaintiff's Sincere Belief**

Defendant first objects to the Magistrate Judge's findings that (1) Plaintiff's description of his religious beliefs in Anahuac Theology is credible; (2) Plaintiff's expert, Dr. George Sieg, testified that Plaintiff's description is consistent with the beliefs of other practitioners of Native American and indigenous religions; (3) the testimony of Defendant's expert, Mr. Alfonso Valdez, does not sufficiently undermine Plaintiff's demonstration of a sincere belief; and (4) Defendant testified that he believed Plaintiff's request to participate in Native American programming to be sincere.  *Doc. 123* at 3.

The weight of the evidence supports each of these findings.  The record reveals that Plaintiff demonstrated knowledge, confidence, and consistency in describing his beliefs, and Dr. Sieg confirmed the religious significance of Plaintiff's recent tattoo which depicts the Aztec calendar.  *Doc. 116* at pp. 37:4-41:13; 47:2-50:7; 118:22-122:4; 152:13-156:18; 205:12-206:10.  Thus, the Magistrate Judge appropriately concluded that Plaintiff's testimony as to sincere belief was credible.

Dr. Sieg also testified that Plaintiff's description of his beliefs is consistent with descriptions of other practitioners of Native American religious programming, and that Christianity may be incorporated into traditional ideologies.  *Doc. 116* at pp. 199:6-200:22; 204:12-205:11; 207:1-6; 208:5-16.  In addition, while Mr. Valdez testified that Plaintiff's notebook and recent tattoo suggest current gang membership, the Court agrees that his testimony failed to sufficiently rebut Plaintiff's demonstration of a

5

sincere belief. *Doc. 122* at 10. The Magistrate Judge properly noted that even if Mr. Valdez established Plaintiff's current membership in a gang, this finding would not preclude Plaintiff's sincere belief in Anahuac Theology. *Doc. 122* at 10.

Finally, the Magistrate Judge found that Defendant himself testified that he believed Plaintiff's request to participate in Native American programming to be sincere. *Doc. 122* at 10. The Court agrees with this interpretation of Defendant's testimony, and therefore the objection is overruled. *See doc. 117* at p. 33:19-21.

### B. Objections 2, 10, & 11: Aztec Symbolism in Sureños Gang Indoctrination

In his second, tenth, and eleventh objections, Defendant objects to the Magistrate Judge's omission of a finding that members of the Sureños prison gang commonly use Aztec history, religion, culture, and symbolism as a method of indoctrination into the gang culture. *Doc. 123* at 3-4. On the contrary, the Magistrate Judge found that the Sureños often have tattoos depicting various aspects of Aztec symbolism and culture, and also clearly noted that the Sureños often use the Nahuatl language as part of their indoctrination. *Doc. 122* at 3. While the Magistrate Judge did not explicitly state that the use of Aztec history, religion, culture, and symbolism is not limited to tattoos and language, the facts proposed, even if accepted as true, would not change the result. The use of Aztec history, religion, culture, and symbolism by the Sureños does not sufficiently undermine Plaintiff's showing of his sincere belief in Anahuac Theology, and therefore Defendant's objections are overruled.

### C. Objection 3: Plaintiff's Attempts to Retrieve His Notebook

In his third objection, Defendant objects to the Magistrate Judge's omission of a finding that Plaintiff has consistently sought the return of his notebook containing gang paraphernalia, symbols, and writings. *Doc. 123* at 4. The Magistrate Judge found that NMCD confiscated from Plaintiff's cell a notebook containing gang paraphernalia as well as written materials often associated with Sureños gang members, and also noted that Mr. Valdez testified that the contents of the notebook suggest gang membership. *Doc. 122* at 3, 4, 10. The Magistrate Judge concluded, however, that it was unclear when the contents of the notebook were written. *Doc. 122* at 4. Although Defendant now argues that Plaintiff's desire to retrieve the notebook is probative of his current gang membership, this is immaterial because Plaintiff's membership in a gang is not mutually exclusive of his sincere belief in Anahuac Theology. Defendant's proposed fact, even if accepted as true, would not change the result, and therefore Defendant's objection is overruled.

### D. Objection 4: Plaintiff's Tattoos

In his fourth objection, Defendant objects to the Magistrate Judge's omission of a finding that Plaintiff has obtained tattoos depicting Aztec symbols and other gang monikers, potentially for the purpose of demonstrating his rank and status in a gang. *Doc. 123* at 4. The Magistrate Judge did in fact find that the Sureños gang members often have tattoos depicting various aspects of Aztec symbolism and culture, and that

many of Plaintiff's tattoos functioned as gang monikers. *Doc. 122* at 3, 6. The Magistrate Judge nonetheless found that although the image depicted in Plaintiff's most recent tattoo may be associated with gang culture, it holds legitimate religious significance to Plaintiff. *Doc. 122* at 7. Thus, Defendant's objection to the findings regarding the tattoos do not undermine the PFRD's finding that Plaintiff has successfully demonstrated that he holds a sincere belief in Anahuac Theology, and therefore Defendant's objection is overruled.

### E. Objections 5 & 6: Plaintiff's History of Religious Non-Observance

In his fifth and sixth objections, Defendant objects to the Magistrate Judge's omission of a finding that Plaintiff has failed to regularly attend sweat lodge ceremonies in the past and that Plaintiff made contradictory statements as to his past attendance of sweat lodge ceremonies. *Doc. 123* at 5. The Magistrate Judge found that Plaintiff first attended a sweat lodge in 1995, but did not attend regularly until 2005. *Doc. 122* at 8. Further, even if the Court had explicitly found that Plaintiff had not attended sweat lodge ceremonies regularly in the past or that Plaintiff made contradictory statements about his past attendance of sweat lodge ceremonies, these findings would not alter the Court's findings regarding Plaintiff's credibility as to his current belief in Anahuac Theology. Thus, Defendant's objections are overruled.

### F. Objection 7: Plaintiff's Misconduct

In his seventh objection, Defendant objects to the Magistrate Judge's omission of

a finding that although Plaintiff claimed that his initial sweat changed his life in various ways, he continued to engage in violence, drug use, and misconduct. *Doc. 123* at 5. The Magistrate Judge directly addressed this argument, explaining that Plaintiff's past violent behavior (and, presumably, his past drug use and misconduct) was not probative of his sincere belief in the teachings of Anahuac Theology, as the two facts are not mutually exclusive. *Doc. 122* at 7. In addition, Plaintiff testified as to the impact of the sweat lodge on various aspects of his life, not only by changing his character but also by helping him reunite with his daughters and strengthen his relationships with them. *Doc. 116* at pp. 62:3-63:14; 73:7-77:14. Having reviewed the record, Defendant's argument on this point does not change the Court's conclusion about Plaintiff's credibility or sincere religious belief. Therefore, Defendant's objection is overruled.

### G. Objection 8: Plaintiff's Past Expressions of Christianity

In his eighth objection, Defendant objects to the Magistrate Judge's finding that Plaintiff's past expressions of Christianity do not significantly undermine his credibility as to his current religious beliefs. *Doc. 123* at 5. The Magistrate Judge found that Plaintiff's past expressions of Christianity could be explained by alternatives such as the evolution of Plaintiff's beliefs and the possibility that he spoke with his wife about Christianity solely to accommodate her beliefs. *Doc. 122* at 8-9. Having reviewed the record, Defendant's argument on this point does not change the Court's conclusion about Plaintiff's credibility or sincere religious belief. *See e.g., doc. 116* at pp. 89:2-95:12;

139:22-146:20).  Therefore, Defendant's objection is overruled.

### H.  Objection 9: Plaintiff's Failure to Call His Wife as a Witness

In his ninth objection, Defendant objects to the Magistrate Judge's omission of a finding that Plaintiff's wife failed to testify even though Plaintiff stated that she had witnessed his religious affiliation and practice.  *Doc. 123* at 6.  Plaintiff testified in depth about his sincere belief, and his knowledge and consistency in describing his beliefs strongly supports a finding of Plaintiff's sincere belief in Anahuac Theology.  *Doc. 122* at 6-7.  Even if the Court were to draw an adverse inference against Plaintiff for his wife's failure to testify, Plaintiff's own testimony demonstrated his sincere belief and therefore the absence of her supporting testimony would not change the result.  Therefore, Defendant's objection is overruled.

### I.  Objection 12: Requirements of NMCD's Policy

In his twelfth objection, Defendant objects to the Magistrate Judge's finding that the language of the prison policy allows members of other religions who do not hold a sincere belief in indigenous religion to nonetheless participate in Native American religious programming so long as they are of Native American descent.  *Doc. 123* at 7.  Defendant objects that the policy was established in accordance with RLUIPA and therefore requires religious sincerity as a prerequisite to religious accommodations.  *Doc. 123* at 7.  The overwhelming evidence, however, supports the Magistrate Judge's finding that both the language and application of this policy allow Native Americans

who do not hold a sincere belief in indigenous religion to nonetheless participate in Native American religious programming.  Defendant himself testified that Christians may participate in Native American programming so long as they can prove that they are a member of a Native American tribe, and that Defendant does not require Native American inmates to demonstrate their sincerity of belief in order to access Native American religious programming.  *Doc. 117* at pp. 12:5-13:5.  In addition, the policy itself does not include a requirement of sincerity of belief.  Stip. Ex. 2.  Thus, the Court adopts the Magistrate Judge's finding, and Defendant's objection is overruled.

### J. Objection 13: Example of Jimmy Kinslow

In his thirteenth objection, Defendant requests a clarification that Mr. Jimmy Kinslow's participation in the sweat lodge ceremony was pursuant to the current prison policy as opposed to a former policy.  *Doc. 123* at 7.  However, this clarification is immaterial, as Mr. Kinslow was discussed only as an example which demonstrates that allowing a non-Native American to attend the sweat lodge is not inherently offensive to Native Americans.  *See doc. 122* at 14.  The policy in place during Mr. Kinslow's use of the sweat lodge is irrelevant to this specific point, and therefore the clarification is unnecessary and the objection is overruled.

### K. Objection 14: Possibility of Participation by Non-Native Americans

In his fourteenth objection, Defendant requests a clarification reflecting that Mr. Shannon McReynolds testified that the language of the current prison policy leaves

11

open the possibility that non-Native Americans will be permitted to participate. *Doc. 123* at 7. While Mr. McReynolds may believe that the policy could allow non-Native Americans to participate, the language of the policy clearly states the requirement that an inmate be Native American in order to participate. Stip. Ex. 2. Even if the Court were to accept such an interpretation, evidence in the record clearly established that race is a determinative factor regardless of sincerity of belief. *Doc. 117* at pp. 12:5-13:5. Thus, the testimony of Mr. McReynolds is insufficient to demonstrate that the policy did not deny Plaintiff access to Native American programming on the basis of his race, and Defendant's objection is overruled.

### L. Objection 15: Clear Weight of Evidence / Improper Burden Shift

In his fifteenth objection, Defendant objects that the Magistrate Judge's finding that Plaintiff holds a sincere religious belief in Anahuac Theology is contrary to the clear weight of the evidence. *Doc. 123* at 8-13. He first objects that the Magistrate Judge failed to adequately consider evidence of Plaintiff's non-observance of what he claims are essential practices of his religion. *Doc. 123* at 9. Second, Defendant argues that Plaintiff has acted contrary to his professed religious practices and that his conversations with his wife suggest that he is a practicing Christian. *Doc. 123* at 10-11. Third, Defendant argues that the Magistrate Judge failed to adequately consider Defendant's evidence demonstrating that Plaintiff's use of Aztec ideology and symbolism stems from his involvement with the Sureños gang as opposed to from a

sincere religious belief. *Doc. 123* at 11.

However, the Magistrate Judge considered all of this evidence and determined that it was insufficient to rebut Plaintiff's demonstration of his sincere belief. *Doc. 122* at 6-10. First, the Magistrate Judge considered the fact that Plaintiff did not regularly attend the sweat lodge ceremonies until 2005, but found that this evidence did not sufficiently rebut the overwhelming evidence of his current sincere belief. *Doc. 122* at 8. Second, the Magistrate Judge found that Plaintiff's past expressions of Christianity easily avail themselves to alternative explanations other than Defendant's suggestion that Plaintiff is a practicing Christian. *Doc. 122* at 8. However, even if the Court were to find that Plaintiff retained some Christian beliefs, such a finding would not change the result in light of Dr. Sieg's testimony that folk religions commonly incorporate Christian elements into their traditional ideologies. *Doc. 122* at 9. Thus, Plaintiff's past expressions of Christianity do not rebut his *prima facie* showing that he holds a sincere belief in Anahuac Theology. Third, the Magistrate Judge properly considered Defendant's evidence that Plaintiff's use of Aztec ideology and symbolism stems from his affiliation with the Sureños gang, but found that this evidence does not rebut his showing of a sincere belief in Anahuac Theology, as the two are not mutually exclusive. *Doc. 122* at 7-10. As a result, the clear weight of the evidence supports the Magistrate Judge's finding that Plaintiff holds a sincere belief in Anahuac Theology.

Finally, Defendant objects to the Magistrate Judge's finding that Defendant's

evidence "does not disprove Plaintiff's sincere belief in Anahuac Theology," arguing that this finding shifts to the Defendant the burden of disproving Plaintiff's sincerity. *Doc. 122* at 12; *Doc. 123* at 12-13. Despite the Magistrate Judge's use of the term "disprove," it is clear that the *prima facie* burden of demonstrating sincere belief was properly placed on Plaintiff. The Magistrate Judge first considered the testimony of Plaintiff and Plaintiff's expert, Dr. Sieg, in finding that Plaintiff's description of his beliefs in Anahuac Theology was credible. *Doc. 122* at 6-7. The Magistrate Judge found that Plaintiff satisfied his burden through his own testimony demonstrating sincere belief and through Dr. Sieg's testimony demonstrating the legitimate religious significance of Plaintiff's recent tattoo depicting the Aztec calendar. *Doc. 122* at 6-7. The Magistrate Judge then considered whether Defendant's evidence sufficiently rebutted Plaintiff's demonstration of his sincere belief, and found that it did not. *Doc. 122* at 10. Therefore, the Magistrate Judge properly placed the burden of proving sincere belief on Plaintiff, and Defendant's objection is overruled.

### M. Objection 16: Plaintiff Must Be Similarly-Situated to Native Americans

In his sixteenth objection, Defendant objects to the Magistrate Judge's conclusion that Plaintiff is similarly-situated to Native Americans who are sincere practitioners of Native American religions, as Defendant claims that Plaintiff is not a sincere practitioner of a Native American religion. *Doc. 123* at 13. As discussed above, the overwhelming weight of the evidence supports the finding that Plaintiff holds a sincere

belief in Anahuac Theology. *See supra*, Section A. As a result, Defendant's objection that Plaintiff is not similarly situated to Native Americans who are sincere practitioners of Native American religions is overruled.

### IV. CONCLUSION

Wherefore, **IT IS HEREBY ORDERED** that:

(1) Defendant's objections are OVERRULED;

(2) the Magistrate Judge's Proposed Findings and Recommended Disposition is ADOPTED;

(3) judgment is GRANTED in favor of Plaintiff as to each of his claims; and

(4) Plaintiff may not be prohibited from participating in Native American religious programming under this policy as currently written.[1]

_____
THE HONORABLE ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE

---

[1] This order does not constitute a requirement that Plaintiff be permitted to participate in Native American programming indefinitely. Should Defendant promulgate a policy which does not violate the First Amendment, the Equal Protection Clause, or the Religious Land Use and Institutionalized Persons Act, and Plaintiff is fairly excluded on the basis of that policy, such exclusion would not violate this order.